IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

DELBERT GLENN ROGERS,            §
Institutional ID No. 02634254,   §
                                 §
            Plaintiff,           §
                                 §
v.                               §     CIVIL ACTION NO. 5:22-CV-130-BQ
                                 §
MARSHA McLANE, *et al.*,         §
                                 §
            Defendants.          §

## REPORT AND RECOMMENDATION[1]

Proceeding pro se and *in forma pauperis*, Plaintiff Delbert Glenn Rogers filed this 42 U.S.C. § 1983 action alleging violations of his constitutional rights while confined at the Texas Civil Commitment Center (TCCC).  *See* ECF Nos. 3, 9, 13, 14, 16.  The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings, including preliminary screening under 28 U.S.C. § 1915.  ECF Nos. 12, 34.  Before the Court is Rogers's second Motion for Summary Judgment (ECF No. 38) and a motion to amend. ECF No. 37.  The undersigned recommends that the United States District Judge **STRIKE** Rogers's second motion for summary judgment (ECF No. 38) and **DENY** as futile Rogers's motion to amend.  ECF No. 37.  Moreover, after considering the allegations in Rogers's Amended Complaint, his questionnaire responses, authenticated records, and applicable law, the undersigned recommends that the district judge **DISMISS** Rogers's claims in accordance with § 1915.

---

[1] Rogers initially filed a form indicating he both consents and declines to consent to proceed before a magistrate judge. ECF No. 15.  The undersigned attempted to clarify Rogers's true intentions (*see* ECF No. 18), but Rogers responded to that inquiry by again checking the boxes for consent and non-consent.  *See* ECF No. 20.  In an abundance of caution, the undersigned enters this Report and Recommendation.

## I.    Background

Rogers was tried and civilly adjudged to be a sexually violent predator (SVP), as defined by Texas Health & Safety Code § 841.003.  Upon his release from the Texas Department of Criminal Justice (TDCJ) after completing his criminal sentence, the State of Texas transferred Rogers to the Bill Clayton Detention Center in Littlefield, Texas,[2] where he remains confined for inpatient treatment in accordance with the provisions of Texas Health & Safety Code § 841.081.

Rogers is confined pursuant to an order of civil commitment; therefore, he is not considered a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening procedures of 28 U.S.C. § 1915A.  *See Bohannan v. Doe*, 527 F. App'x 283, 289–90 (5th Cir. 2013) (per curiam) (concluding that a civilly committed SVP was not a prisoner within the meaning of the Prison Litigation Reform Act); *Michau v. Charleston Cnty.*, 434 F.3d 725, 727 (4th Cir. 2006) (same); *Allen v. Seiler*, No. 4:12–CV–414–Y, 2013 WL 357614, at *1 n.1 (N.D. Tex.) (same) (citing *Jackson v. Johnson*, 475 F.3d 261, 266 (5th Cir. 2007)), *aff'd*, 535 F. App'x 423, 423 (5th Cir. 2013) (per curiam).  Because Rogers is proceeding IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2)(B).

## II.    Motion for Summary Judgment

While in the preliminary screening stage and prior to Defendants being served with process, Rogers filed a motion for summary judgment, asserting that there is no genuine issue of material fact as to his claims.  ECF No. 22.  The undersigned recommended that the United States District Judge deny Rogers's motion as premature, and on December 5, 2022, the district judge adopted that recommendation and denied Rogers's motion.  ECF Nos. 29, 33.  A mere three weeks later, Rogers filed the Second Motion for Summary Judgment now before the Court.  ECF No. 38.

---

[2] The Bill Clayton Detention Center is also known as the TCCC, which is currently operated by Management & Training Corporation (MTC), a private company under contract with the Texas Civil Commitment Office (TCCO).

The motion is virtually identical to the first, and Rogers did not seek leave to file a second motion. *See* Mot. for Summ. J. 1–3, ECF No. 38 [hereinafter Mot.].[3]  Because Rogers's motion violates this Court's Local Rules, the undersigned recommends that the United States District Judge **STRIKE** Rogers's second Motion for Summary Judgment.  Alternatively, the undersigned recommends the district judge **DENY** as premature Rogers's motion.

### A.  Summary Judgment Standard

Where the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he substantive law will identify which facts are material."  *Id.*

The movant "bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] . . . [he] believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant will have the burden of proof on a claim or defense at trial, he "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

---

[3] Page citations to Rogers's filings refer to the electronic page number assigned by the Court's electronic filing system.

In considering a summary judgment motion, courts must view all facts and inferences in the light most favorable to the non-moving party and resolve any disputed material facts in that party's favor.  *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  Where, as here, a plaintiff files a motion for summary judgment, he essentially "takes the position that he is entitled to prevail as a matter of law because the opponent has no valid . . . defense to the action."  10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2711 (4th ed. Apr. 2022 Update).

**B.  Rogers's second summary judgment motion violates Local Rule 56.2(b).**

Local Rule 56.2(b) provides that "[u]nless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment."  N.D. TEX. LOC. CIV. R. 56.2(b).  "Local Rule 56.2(b) acts, in relevant part, to control 'the number of summary judgment motions that can be filed without leave of court.'"  *Moore v. City of Rowlett*, No. 3:10-CV-73-F, 2011 WL 13232698, at *1 (N.D. Tex. Jan. 13, 2011) (quoting *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06 CV 0073 D, 2007 WL 1969752, at *2 (N.D. Tex. June 27, 2007)).  "It also enables the court to regulate successive motions that are filed after the court has devoted time and effort to deciding an initial motion and has identified issues that are not subject to summary disposition, but as to which the movant seeks a second bite at the apple."  *Id.* (quoting *Home Depot*, 2007 WL 1969752, at *2).  "Implicit in such decisions is a federal court's inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Id.* (quoting *Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199, 203 (5th Cir. 1983)).

Rogers did not seek leave of Court before filing the instant motion, nor does he do so through his motion.  *See* ECF No. 38.  The undersigned therefore recommends that the district

judge strike the motion. *See, e.g.*, *Neale v. Mid-West Truck, Inc.*, No. 5:17-CV-078-C, 2018 WL 8951187, at *3 (N.D. Tex. Aug. 28, 2018) (Cummings, J.) (striking plaintiff's successive summary judgment motion as violative of Local Rule 56.2(b)).

### C. Merits Analysis

At the outset, the Court observes that Rogers filed his second summary judgment motion approximately six months after initiating this suit. The Court is in the process of screening Rogers's claims, as statutorily required under § 1915, and as a result, Defendants have not been served or otherwise answered, nor have the parties engaged in discovery. *See* ECF No. 16, at 1 ¶¶ 1, 3 (directing service of process withheld pending judicial screening and staying discovery "until an answer is filed or until further order"). In addition, Rogers does not indicate that he provided notice of the motion to Defendants. *See* Mot. 6.

The Fifth Circuit has explained that "[s]ummary judgment assumes some discovery" (*Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002)), and such motions should not "ordinarily be granted before discovery has been completed." *Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979); *see F.D.I.C. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) ("Summary judgment is appropriate if, *after discovery*, there is no genuine dispute over any material fact."). As a result, courts have denied as premature summary judgment motions filed before the parties have had adequate opportunity to conduct discovery. *See, e.g.*, *Brown*, 311 F.3d at 333–34 (holding district court abused its discretion by declining to rule on plaintiff's request for discovery but then "grant[ing] summary judgment on the grounds that there was insufficient evidence of [defendant's] involvement in a conspiracy, precisely the type of evidence sought by [plaintiff]"); *Cree v. Braco*, No. 2:21-CV-00208, 2022 WL 1379512, at *1 (S.D. Tex. Apr. 6, 2022) (recommending the district judge deny without

prejudice as premature plaintiff's summary judgment motion, where defendant had not yet answered and no discovery had taken place), *R. & R. adopted sub nom. Cree v. Collier*, 2022 WL 1321043 (S.D. Tex. May 3, 2022); *Whitfield v. Miss. Bureau of Narcotics*, No. 3:17cv987-HSO-JCG, 2019 WL 6534144, at *4 (S.D. Miss. Dec. 4, 2019) ("Because neither party has had adequate time to complete discovery, [p]laintiff's [m]otion for [s]ummary [j]udgment should be denied without prejudice as premature."); *George v. Go Frac, LLC*, No. SA-15-CV-943-XR, 2016 WL 94146, at *3 (W.D. Tex. Jan. 7, 2016) ("Granting summary judgment not just before discovery has been completed, but before it has even begun on this issue, would be premature.").

More fundamentally, courts have denied plaintiffs' summary judgment motions where they were filed before the defendant answered or while the court was in the process of conducting preliminary screening under § 1915. *See, e.g.*, *Johnson v. Gutierrez*, No. 9:21-cv-46, 2021 WL 6693938, at *1 (E.D. Tex. Dec. 16, 2021) (concluding plaintiff's motion for summary judgment was premature, where plaintiff filed it before defendants had been served with process and answered), *R. & R. adopted sub nom. Rayford v. Gutierrez*, 2022 WL 233194 (E.D. Tex. Jan. 25, 2022); *Williams v. Taylor Cnty. Jail*, No. 1:20-CV-00266-BU, 2021 WL 3434992, at *1 (N.D. Tex. July 1, 2021) (recommending denial of plaintiff's summary judgment motion where judicial screening remained pending, summons had not yet issued, and defendants had not answered), *R. & R. adopted by* 2021 WL 3421416 (N.D. Tex. Aug. 5, 2021); *Watkins v. Monroe*, No. 6:18cv347, 2019 WL 1869864, at *1 (E.D. Tex. Mar. 27, 2019) ("Federal courts are permitted to dismiss a motion for summary judgment without prejudice if it is filed before any party answers."), *R. & R. adopted by* 2019 WL 1858100 (E.D. Tex. Apr. 25, 2019); *Mack v. Doe*, No. 3:08-CV-0343-N, 2008 WL 2097169, at *1 (N.D. Tex. May 16, 2008) (explaining that a motion for summary judgment "is premature in a case subjected to preliminary screening").

Because (1) Defendants have not yet been served or answered Rogers's claims, (2) the parties have not conducted any discovery, and (3) the Court is in the process of screening this case, Rogers's motion is not only premature but inappropriate.  The undersigned therefore alternatively recommends that the district judge deny Rogers's motion.

### III.    Rogers's Civil Rights Complaint

### A.  Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (per curiam) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories.  *See id.* at 327.  When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records.  *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002)).

**B. Rogers's Allegations**

Rogers asserts claims against the following Defendants: (1) Marsha McLane, Executive Director of the TCCO; (2) Jessica Marsh, "T.C.C.O. lawyer for Ms. Marsha McLane";[4] (3) Jamie Owens, case manager;[5] (4) Kellen Winslow, therapist; and (5) Amy Curtis, unknown title. Am. Compl. 1, 3, ECF No. 13. In his questionnaire responses, Rogers also names: (1) Mandi Castillo; (2) Captain Zachary Saldivar;[6] (3) James Winkler, Security Chief;[7] (4) Wayne Smoker; (5) Miranda Newkirk, Nurse Practitioner (NP); (6) Officer Annabelle Viurquez; (7) Sergeant Krista Lopez; and (8) "Christ" Greenwalt. Questionnaire 11, 14, 22, 25, ECF No. 28. He sues Defendants in their individual and official capacities. *See* Am. Compl. 9.

Rogers's precise allegations are difficult to decipher and are primarily based on conclusory statements devoid of detail. The Court understands Rogers as first alleging that Defendants

---

[4] Rogers spells Jessica's surname as both "March" and "Marsh." Am. Compl. 1, 3, 10. The Court adopts the latter spelling.

[5] Rogers spells Jamie's surname as both "Owen" and "Owens." Am. Compl. 1, 3, 16. The Court adopts the latter spelling.

[6] Rogers spells Zachary's surname as both "Saldivar" and "Saldivor." Questionnaire 11, 22. The Court adopts the former spelling.

[7] Rogers spells James's surname as both "Winckler" and "Winkler." Questionnaire 11, 22. The Court adopts the latter spelling.

McLane and Owens committed embezzlement and extortion by deducting 33% from his economic impact checks (i.e., stimulus money sent to Americans during the COVID-19 pandemic) in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* Questionnaire 3, 15–16. Rogers also contends that Defendant Owens retaliated and required him "to show" his legal work. Am. Compl. 16–19; Questionnaire 15–17, 19. And as to Defendant Marsh, Rogers avers that she is "corrupt," "killed [his] apartment," "refused to take any or all action's [sic] against Ms. Jamie Owens and Mr. Kellen Winslow," and threatened him "by forcing [Rogers] to give them most of [his] legal work that [he has] filed against T.C.C.O." Questionnaire 4. More broadly, Rogers contends that Defendants Owens and Winslow conspired by "[l]ying to the courts" and "manipulat[ing] . . . enjoyment opportunity to hurt the client and his family because in their mind everyone is accepted stupid [sic all]." *Id.* at 23–24; *see id.* at 19, 21; Am. Compl. 3.

Rogers next asserts that Defendants Winslow and Curtis are not properly licensed to provide certain types of therapy, which hindered his advancement to a higher tier. Questionnaire 5, 8; *see* Am. Compl. 3–4, 10, 20, 22–23. Despite the Court's inquiry, Rogers did not provide factual detail concerning this allegation. *See* Questionnaire 5 (asking Rogers to "[s]pecifically describe" how Defendant Winslow's alleged licensing deficiency violated his constitutional rights and harmed him, but responding with only vague assertions), 8 (same for Defendant Curtis). In addition, Rogers alleges that Defendant Curtis verbally harassed him and stood "over [his] head at the law library or on her computer looking at [Rogers's] work that often [was] changed behind [his] back." *Id.* at 8 (cleaned up). Rogers also takes issue with Defendant Winslow's decision to have Rogers redo or otherwise complete tier assignments. *See id.* at 24–25.

Rogers further maintains that Defendants deprived him of adequate treatment, including group and tier therapy. *See* Am. Compl. 11 (alleging Defendants placed him in "punitive

segregation" for 61.5 days "without any therapeutic treatment"); Questionnaire 10–12 (asking Rogers questions regarding his assertion that Defendants denied him adequate sex offender treatment). Rogers's precise allegations are unclear, but he seems to concede that he received tier therapy and group therapy—just not with the frequency he believed necessary or required. *See* Questionnaire 10–12; Am. Compl. 3 (alleging that Defendant McLane reduced "therapeutic treatment to one time a week over 7 months" in violation of "contract treatment two times a week" (cleaned up)).

Rogers also asserts a claim based on denial of adequate medical treatment. *See* Am. Compl. 14. He avers that Defendant Newkirk "refused" to order a follow-up colonoscopy despite an outside "doctor stat[ing] [Rogers] needed one." Questionnaire 14. Rogers, however, does not contend he has suffered any harm as a result of the purported denial. *Id.* at 15.

Finally, Rogers references criminal statutes and a desire to pursue criminal prosecution of Defendants. *See, e.g.*, Am. Compl. 10, 12, 15. He also mentions Defendants' alleged "hate crimes" (*id.* at 11, 24; *see* Questionnaire 25) and destruction of property. Questionnaire 22.

Rogers seeks the following relief for the purported constitutional violations: (1) release from civil commitment; (2) a declaratory judgment that Defendants violated his rights; and (3) money damages. Am. Compl. 4, 25–26.

### C. Rogers's conclusory references to legal terms and case law provides no basis for viable claims.

Rogers's Amended Complaint is a menagerie of legal terms and snippets from cases copied and pasted into the document. For example:

[s]ecured by the Federal Constitution laws, under **Ramer (2013), Ed Cal) 2013 U. S. Dist. Lexis 157833)** Due Process Clause of the Fourteenth Amendment**,** that's deprivation of rights, life and liberty and property by "[O]bstruction of Justice," in their "[I]ndividual and Official Capacities, "acts of deprive" namely: Ms. Marsha Mc Lane, Executive Director and Supervisory, acts due to [i]llegal criminal activities that are harmful, of [o]bjective using **"[T]exas Department of Criminal Justice,"** objective known as [T. D. C. J.], as a "human traffic" a tool of creating money, for murdering people of none subjective of "[n]ew convictions citizen" that hasn't committed a [c]rime as of human trafficking **365 ,** days a year threats of abusive created by Texas Civil Commitment Office, and "[T]exas Civil Commitment Center," contracted to Management Training Corporation, 1305 South Main, suite #101 Henderson, Texas 75654 Custom 1. Cause **No: SC-20-018-JP3**, acts of punitive death **(or)** [t]hreats turn into punitive. By forcing client residents not to be near their family's creating by handpicked of the "[s]tate of only" elderly men of [a]ges from **[T.D.C.J.]** of ages 45, years and older elderly men over the ages of 86, years old continually. Violation of Due

*Id.* at 11.  And in his "Affidavit of Facts" section:

(7). Plaintiff, allegation claimant states a cause for action [d]emand seeking against Ms. Marsha McLane, acts of Criminal activities within her norm individual and Official Capacities, for these [a]cts of individual [o]bjective "[O]bstruction of Justice," "Abusive of Authority" and "[D]enial of Medical Departments, of treatments [o]bjective [m]alpractices force [n]egligent," on one due to bodily injuries became suffering objectively harmful [o]bjective of assaults" by the medical department lacking of conduct medical care and [m]alpractices by abusive grossly negligent and denial of dental care "[u]nder color of state law." "[D]enial of group treatment because there isn't enough therapist" that are once a week cover-ups or hardly no "[s]taff security" objectively to keep up. Because of [M. T. C.] falsification of contracts documentary with [T]exas Civil Commitment Office, and Management Training Corporation, 1305 South Main, suite #101 Henderson, Texas 75654. Custom 1: Cause No. SC-20-018- JP3. Violation of Civil Rights Acts under 42 U. S. C. S. § 1983, of acts violating "[F]ederal Rights under Color of State Law, acts under 42 U. S. C. S. § 1983, Civil Death N- (1776) Deprive of Civil Rights – N. P. I, often attrib (1721): The Nonpolitical rights of a citizen: "[T]he Rights of Personal Liberty guaranteed to U. S. Citizens by the 13th and 14th Amendment, to the Constitution and Laws, by Congress." Plaintiff, allegation claimant states a cause for action demand, [s]eeks of the violation [d]ue to objective personal involvement abusive within their [o]bjective "[I]ndividual and official capacities," acts of **"evil intent"** that has been "[i]ntentionally with the intent [i]llegally activities failure    responsible for corrupt and ability of the action within their [n]orm of acts operations."

(10). Plaintiff, allegation claimant states a cause for action [d]emand seeks, **"[C]HARGES"** against each Defendant: Criminal activities against: Marsha McLane; Jessica; Jamie Owens; Kellen Winslow; Amy Curtis, deprive acts of "[O]bstruction of Justice, activities up-on **Wood v. Strickland, 420 U. S. 308, 322, (1975}.** The subjective component refers to "[p]ermissible intentionally. Ibid. Characteristically the court has defined these "[e]lements by identifying the circumstance in which Qualified Immunity would not be available." Referring both to the objective and subjective elements, we have known, that qualified immunity, "[w]ould be defeated if an official "[k]new" or "[r]esponsibility, would violation the [C]onstitutional Rights," or "[s]he took within his sphere of official responsibility, would violation the [C]onstitutional Rights of the Plaintiff," or "[i]f he took the action with the malicious intentionally injury..." **Ibid.**

11

*Id.* at 14, 15. Moreover, Rogers references claims the Court has previously dismissed. *E.g.*, Am. Compl. 11, 15–16 (alleging Defendants wrongfully placed him in solitary confinement for 61.5 days after he was found guilty of a disciplinary infraction for possessing pornographic material), 11 (asserting a deprivation of "human rights for dental fully Care Medical treatment [sic all]]"), 13 (alluding to his alleged "almost death almost caused not once, not two, but almost three times harmful damages of by medical department [sic all]"); *see Rogers v. McLane*, No. 5:21-cv-149-BQ, ECF No. 19 (N.D. Tex. July 25, 2022) (addressing Rogers's claims related to the allegedly unlawful disciplinary for possessing pornographic material); *Rogers v. Cochran*, No. 5:20-CV-185-M-BQ, 2021 WL 1877385, at *3–4, *6–11 (N.D. Tex. Apr. 19, 2021) (concluding Rogers failed to state a claim based on his medical claims regarding specific medical appointments, "his Metformin prescription," "the alleged denial of 'treatments' between May 1 and August 30, 2019," "his 'ignored' medical complaints," "top bunk placement," "the discontinuation of physical therapy," "the denial of knee surgery," and "dental care"), *R. & R. adopted by* 2021 WL 1872584 (N.D. Tex. May 10, 2021); *Rogers v. McLane*, No. 5:19-cv-192-BQ, ECF No. 11, at 4–11 (N.D. Tex. June 23, 2021) (dismissing Rogers's medical care claims related to medication prescription and orthopedic care regarding his left knee); *Rogers v. McLane*, No. 5:19-cv-156-BQ, ECF No. 18, at 8–14 (N.D. Tex. June 7, 2021) (finding Rogers's medical care claims without merit, which related to a bottom-bunk pass, treatment of his back and knee, an eyeglasses prescription, and medication); *Rogers v. Caswell*, No. 5:18-CV-181-BQ, 2019 WL 10599666, at *3–4 (N.D. Tex. Feb. 13, 2019) (rejecting Rogers's medical care claim based on allegation that Defendant failed to remove or replace his ankle monitor, causing a "burn"), *aff'd*, 823 F. App'x 263 (5th Cir. 2020) (per curiam).

The Court carefully reviewed Rogers's Amended Complaint and, where Rogers pleaded some facts to support the *new* allegations the Court issued a questionnaire to further develop the factual bases of Rogers's claims. *See* ECF Nos. 26, 28. To the extent Rogers's Amended Complaint mentions new legal claims not discussed herein, the undersigned recommends that the district judge dismiss them without prejudice as conclusory. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (per curiam) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims).

### D. Some relief sought by Rogers—release from civil commitment and criminal prosecution of Defendants—is not viable under § 1983.

To the extent Rogers asks the Court to release him from civil commitment so that he can go "home to [his] family and children" (Am. Compl. 4), he must pursue such relief through a petition for a writ of habeas corpus.[8] *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005); *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (providing that a habeas petition "is the proper vehicle to seek release from custody"); *Banda v. N.J. Dep't of Mental Health Servs.*, No. 05–2622(WJM), 2005 WL 2129296, at *3 (D.N.J. Aug. 31, 2005) ("Thus, [SVP] can challenge the fact of his involuntary commitment, as opposed to the conditions of his confinement, only by petitioning for a writ of habeas corpus and after exhausting his state court remedies as required by 28 U.S.C. § 2254."); *cf. Newman v. Reed*, No. 3:18-CV-2679-N-BH, 2019 WL 652963, at *1–2 (N.D. Tex. Jan. 10, 2019) (recognizing plaintiff failed to state a claim upon which relief could be granted in seeking dismissal of his state criminal case under § 1983, explaining that plaintiff could "only obtain declaratory or monetary relief in [a] § 1983 action"), *R. & R. adopted by* 2019 WL 652471 (N.D. Tex. Feb. 15, 2019).

---

[8] The Court does not construe Rogers's request as a habeas petition because he clearly filed this action under § 1983. *See* Am. Compl. 9.

As to any request for criminal prosecution of Defendants, Rogers likewise cannot obtain such relief. *See, e.g.*, Am. Compl. 9 (titling document "Criminal Activities Complaint" (emphasis omitted)), 10 (citing various provisions of the Texas Penal Code), 12 (stating that he is "seeking criminal charges against all the Defendants" (cleaned up)).    Requests by private parties for federal courts to investigate alleged criminal matters and file charges are not cognizable under § 1983. *See, e.g.*, *Combs v. Dunn*, 279 F. App'x 300, 300 (5th Cir. 2008) (per curiam) (affirming lower court's dismissal as frivolous prisoner's application for writ of mandamus seeking to compel district court to investigate and file criminal charges against a narcotics detective).    Moreover, a private citizen cannot initiate a criminal prosecution against an individual. *Gill v. Texas*, 153 F. App'x 261, 262–63 (5th Cir. 2005) (per curiam) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626, 635 (N.D. Tex. 2007).    In sum, the Court cannot grant the relief Rogers seeks.    *See, e.g.*, *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) ("Contrary to [plaintiff's] contention, he does not have a constitutional right to have someone criminally prosecuted."); *McGinty, Jr. v. Solis*, No. H-22-1146, 2022 WL 1746921, at *2 (S.D. Tex. May 31, 2022) (dismissing as frivolous plaintiff's claim seeking criminal charges against fellow inmate).    The undersigned therefore recommends the district judge dismiss without prejudice Rogers's claims for release and criminal prosecution.

### E. Rogers lacks standing to pursue retrospective declaratory relief.

To obtain declaratory relief, a plaintiff must demonstrate that he is "likely to suffer *future* injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (emphasis added); *see Serafine v. Crump*, 800 F. App'x 234, 236 (5th Cir. 2020) (per curiam) (observing that although *Lyons* addressed injunctive relief, its "reasoning applies equally to declaratory relief").    Where the declaratory relief is premised on past acts, a plaintiff must establish "either continuing harm or a

real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). "The threat of future injury must be 'certainly impending'; mere '[a]llegations of *possible* future injury' do not suffice." *Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Rogers asks the Court to enter a declaratory judgment stating that Defendants violated his "Constitutional Rights, and Federal Right, of Due Process Clause of the Fourteenth Amendment [sic all]." Am. Compl. 25. Rogers's request for declaratory relief is retroactive in that he asks the Court to declare unlawful Defendants' *past* conduct. *See id.* Thus, Rogers has standing only if he has pleaded facts showing continuing harm or an immediate threat of repeated harm. *Herman*, 959 F.2d at 1285. He has not.

Rogers asserts no facts indicating Defendants will again violate his constitutional rights. *See* Am. Compl. 3–25; Questionnaire 1–25. Because Rogers only seeks retrospective declaratory relief, the undersigned recommends that the district judge dismiss those claims without prejudice for lack of standing. *See, e.g.*, *Waller v. Hanlon*, 922 F.3d 590, 603–04 (5th Cir. 2019) (reversing "district court's order declining to dismiss the plaintiffs' claims for declaratory relief," which were based on past injury); *Malik v. U.S. Dep't of Homeland Sec.*, 619 F. Supp. 3d 652, 657–58 (N.D. Tex. 2022) (dismissing plaintiff's claims for declaratory relief, which were based on past wrongs and alleged only speculative future harm); *Henry v. Adeyemi*, No. G–09–46, 2012 WL 163820, at *2 (S.D. Tex. Jan. 19, 2012) (concluding prisoner's claims for declaratory judgment that defendant violated his civil rights by allegedly throwing urine on him arose from past conduct and prisoner therefore lacked standing).

Considering the recommendations contained in Section III.D–E, the only remaining claims for relief asserted by Rogers are those for monetary damages.  *See* Am. Compl. 25–26.

### F. Any equal protection claims Rogers attempts to bring based on Defendants' purported hate crimes are not viable.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish a violation of his right to equal protection, Rogers "must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class[,]' or (b) he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (alteration in original) (internal citation omitted) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam).  "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992) (per curiam).

Here, Rogers apparently believes Defendants Smoker, Winkler, McLane, Marsh, Owens, Winslow, and Greenwalt have discriminated against him or otherwise shown bias; however, he does not plead any facts to support equal protection violations.  *See* Am. Compl. 11, 18, 24; Questionnaire 25.

Although institutionalized persons "have [a] constitutional right to be free from racial discrimination" (*Bentley v. Beck*, 625 F.2d 70, 70–71 (5th Cir. Unit B 1980)), Rogers fails to plead

16

facts indicating that any Defendant actually discriminated against him in violation of the Constitution.  *See Portillo v. Brown*, No. 2:07–CV–0031, 2009 WL 1160345, at *3 (N.D. Tex. Apr. 28, 2009) (assuming the plaintiff alleged "facts showing defendant . . . may have disliked him because of his race, he [did] not allege[] facts showing [defendant] actually committed a discriminatory act").  Neither has Rogers alleged facts suggesting a racial motivation, i.e., that any discrimination occurred *because of his race*.  *See Cruz-Hernandez v. Johnson Cnty. Det. Ctr.*, No. 3:16-CV-220-M-BH, 2017 WL 927825, at *7 (N.D. Tex. Jan. 6, 2017) ("The mere suspicion or belief that one has suffered race-based discrimination is insufficient to maintain [a cause of] action."); *Heijnen v. Villareal*, No. 6:12–CV–00036–BL ECF, 2013 WL 950791, at *3 (N.D. Tex. Mar. 11, 2013) ("[Plaintiff] has not established racially discriminatory intent or purpose; he has merely asserted allegations based on his perception, which are insufficient to support an equal protection claim.").

Moreover, Rogers does not allege that he was intentionally treated differently from other similarly situated persons at the TCCC.  *See Gibson*, 700 F.3d at 238; *Rogers*, 823 F. App'x at 265 ("Rogers argues that he was denied medical care and was targeted due to his race.  However, he does not allege an act that reflects discriminatory animus or offer facts showing that, due to his race, he was treated differently than a similarly situated person.").  Absent such allegations, Rogers's equal protection claims fail.  *See Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (per curiam) (affirming dismissal at screening of equal protection claim because pretrial detainee did not allege that any defendant had discriminatory intent); *Longmire v. Starr*, No. 3:05-CV-0315-M, 2005 WL 2990908, at *2–4 (N.D. Tex. Aug. 29, 2005) (dismissing as frivolous equal protection claim where plaintiff's allegations did not establish the necessary discriminatory purpose).

For these reasons, the undersigned recommends dismissal of Rogers's discrimination claims arising from Defendants' purported hate crimes.

### G. Rogers's allegations of extortion and embezzlement are meritless.

Rogers claims that by deducting 33% from his economic impact stimulus checks, Defendants McLane and Owens extorted him and embezzled the money. *See, e.g.*, Am. Compl. 13; Questionnaire 3, 15–16. Initially, the Court observes that Texas state law expressly grants the TCCC authority to withdraw a percentage of Rogers's funds. Under § 841.084 of the Texas Health & Safety Code, non-indigent SVPs are "responsible for the cost of" their "housing and treatment," "tracking service[s]," and "repairs to or replacement of the tracking equipment . . . if the person intentionally caused the damage to or loss of the equipment." Tex. Health & Safety Code § 841.084(a)(1). The TCCO determines the amount "necessary to defray the cost of providing the housing, treatment, and service"—i.e., cost recovery payments. *Id.* § 841.084(a)(2). Moreover, the TCCO is responsible for "create[ing] and administer[ing] a policy regarding cost recovery" and "shall not require payment in an amount that exceeds 50% of the income of the committed person or the actual cost of the services." 37 Tex. Admin. Code § 810.273.

In Rogers's view, Defendants were not authorized to deduct cost recovery payments from the stimulus checks because that money is not taxable income.[9] Questionnaire 16 ("This economic impact payments isn't considered taxable income." (cleaned up)). Thus, Rogers maintains Defendants' deduction was unlawful. Rogers does not specify whether he is bringing criminal or civil claims for embezzlement and extortion. *See* Am. Compl. 13; Questionnaire 3, 15–16. And

---

[9] The Texas Administrative Code defines "income" as it relates to § 841.084 to include, *inter alia*, "social security income," "unemployment benefits," and "gifts of cash." Tex. Admin. Code § 810.122(5)(A). The Court acknowledges that the stimulus payments (which were unique payments issued by the federal government during the COVID-19 pandemic) are not expressly contemplated by the Texas Administrative Code. Regardless, Rogers's allegation fails to state a claim for the reasons stated herein and because he essentially contends Defendants mistakenly deducted the cost recovery payments—a dispute he should resolve through the internal grievance process.

while Rogers does not expressly invoke RICO in his Amended Complaint, his subsequent filings indicate that he intends to bring a RICO claim against Defendants. *See* ECF No. 21 (moving for judgment on the pleadings and referencing RICO statute, 18 U.S.C. § 1962); ECF No. 37 (moving to file second amended complaint and citing RICO statute in connection with allegation that Defendants unlawfully deducted money from his stimulus payments). To the extent Rogers raises civil RICO claims, they should be dismissed.[10]

"RICO creates a civil cause of action for any person whose business or property was injured by another's violation of" § 1962. *Thymes v. AT&T Mobility Servs., LLC*, No. 6:19-cv-00090, 2019 WL 1768311, at *5 (W.D. La. Mar. 19, 2019) (citing 18 U.S.C. § 1964(c)), *R. & R. adopted by* 2019 WL 1757864 (W.D. La. Apr. 18, 2019); *see Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998) (per curiam) ("RICO provides a private civil action to recover treble damages for injury suffered as a result of a violation of its substantive provisions."). Rogers does not specify the subsection of RICO under which he brings his claim. "Regardless of subsection," i.e., § 1962(a), (b), (c), or (d), "RICO claims . . . have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citation omitted).

Liberally construing his allegations, Rogers contends that Defendants McLane and Owens's purported deduction of 33% from his stimulus checks constitutes "racketeering activity." *See* Am. Compl. 13; Questionnaire 3, 15–16. This act does not qualify as extortion (*see*

---

[10] Any criminal RICO claim should be dismissed for the reasons stated in Section III.D. Moreover, any civil RICO claim for money damages against Defendants in their official capacities (*see* Am. Compl. 9) is barred by Eleventh Amendment state sovereign immunity. *See, e.g.*, *Lewis v. La. State Univ.*, No. 21-198-SM-RLB, 2021 WL 5752239, at *12 (M.D. La. Dec. 2, 2021) (observing that although the Fifth Circuit has not addressed the issue, "other federal appellate courts, and district courts within the Fifth Circuit, have held that Congress has not abrogated the states' Eleventh Amendment immunity under RICO" and there is no express waiver language in the RICO statute).

§ 1951(b)(2)), nor is it otherwise defined as criminal activity in § 1961(a) (defining "racketeering activity"). Moreover, Rogers does not plead any non-conclusory facts showing that Defendants McLane and Owens agreed to form or advance a criminal enterprise, which is fatal to his claim. *See* § 1961(4) (defining "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"); *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) ("[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." (citation omitted)). For these reasons, the undersigned recommends the district judge dismiss Rogers's RICO claims. *See, e.g.*, *Kahoe v. Salcedo*, No. 22-3110, 2023 WL 2999585, at *6 (E.D. La. Feb. 9, 2023) ("[W]hile [plaintiff's] complaint includes conclusory references to fraud, its allegations are insufficient to state violations of any of the particularized federal fraud, theft, or property crimes, constituting 'racketeering activity' as defined in the RICO statute." (footnote omitted)), *R. & R. adopted by* 2023 WL 2367436 (E.D. La. Mar. 6, 2023); *Thymes*, 2019 WL 1768311, at *6 (finding plaintiff failed to state viable RICO claim because he did not allege facts showing defendants "engaged in any criminal activity" or "form[ed] or advance[d] a criminal enterprise"); *Bonner v. Bosworth*, No. 3:10-CV-2150-O-BH, 2010 WL 11534476, at *2 (N.D. Tex. Nov. 30, 2010) (recommending dismissal of plaintiff's RICO claim where he failed to plead "facts that show[ed] or create[d] a reasonable inference of a pattern of racketeering activity"), *R. & R. adopted by* 2011 WL 13199228 (N.D. Tex. May 2, 2011); *Bittakis v. City of El Paso*, 480 F. Supp. 2d 895, 921 (W.D. Tex. 2007) (concluding plaintiff failed to state a RICO claim in part because he did "not allege that any of the Defendants were associated in any manner with one another apart from their responsibilities at the [d]istrict [a]ttorney's [o]ffice").

**H. Any claim surrounding Rogers's legal work is conclusory and therefore subject to dismissal.**

Rogers generally contends that Defendant Owens required him "to show" all his legal work in 2021. Am. Compl. 17–19; Questionnaire 15–17, 19. He similarly claims that Defendant Curtis stood "over [his] head at the law-library" or used her computer to look at Rogers's "legal work." Questionnaire 8. In addition, Rogers alleges Defendant Marsh threatened him "by forcing [him] to give them most of [his] legal work that [he has] filed against T.C.C.O." *Id.* at 4. Rogers believes that unspecified persons "changed" his legal work behind his back and "destroyed [his] property," but he does not otherwise assert he suffered any specific harm as a result of Defendants' alleged actions. *See id.* at 4, 8, 17, 19. Because Rogers's claims relate to legal work, the Court liberally construes his allegations as raising access to courts claims.[11]

To prevail on an access to courts claim, Rogers must show that Defendants denied him access to the courts and that the denial caused him prejudice. *See Bohannan v. Griffin*, No. 4:11-CV-299-A, 2016 WL 3647625, at *13 (N.D. Tex. June 30, 2016) (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)). That is, Rogers must plead facts demonstrating "an actual injury

---

[11] To the extent Rogers alleges that he has a privacy interest in the "legal work" he conducts on TCCC computers or that Rogers stores in his dormitory, he is mistaken. *See generally Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding that prisoners do not have a legitimate expectation of privacy in their cells, therefore "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"); *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("Loss of freedom of choice and privacy are inherent incidents of confinement in . . . a [detention] facility."); *see also Glazewski v. Barnett*, No. 22-1877 (JXN)(JSA), 2022 WL 2046921, at *3–4 (D.N.J. June 7, 2022) (dismissing civilly detained SVP's claim that cell search violated his constitutional rights, "because detainees lack an expectation of privacy in their cells"); *Chubb v. Keck*, No. 17-3220-SAC, 2020 WL 5653263, at *6 (D. Kan. Sept. 23, 2020) ("[C]ourts have not found that residents in sexual predator treatment programs generally have a reasonable expectation of privacy in their rooms."); *Brooks v. Co. Dep't of Corr.*, No. 17-cv-02190-KLM, 2018 WL 10357251, at *4 (D. Colo. May 30, 2018) (Prisoner "does not have a Fourth Amendment right to privacy regarding files created and stored on the prison law library computer."); *Pierre v. LeBlanc*, No. 10–618–JJB–SCR, 2011 WL 4737408, at *5 (M.D. La. Sept. 15, 2011) ("Plaintiff does not have a Fourth Amendment right to privacy regarding the files contained on the prison library computer, nor a right to maintain her personal or work files on the prison library computer."), *R. & R. adopted by* 2012 WL 272884 (M.D. La. Jan. 27, 2012). Nor can the undersigned envision a scenario where any claimed pro se "work product privilege" enjoys protection equal or superior to fundamental Fourth Amendment individual privacy rights generally provided by the Constitution but that hold no sway in an institutional setting.

arising from this purported denial" of access. *Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014) (per curiam) (citing *Lewis v. Casey*, 518 U.S. 343, 356 (1996)). Rogers does not contend Defendants' alleged viewing, taking, or destruction of his legal work (which Rogers does not specifically identify (*see* Questionnaire 17)) caused him any harm—e.g., that he was unable to present a nonfrivolous legal claim or defense—nor has he alleged that the legal work related to an underlying nonfrivolous cause of action. *See Lewis*, 518 U.S. at 355–56. The district judge should therefore dismiss his access to courts claims.[12]  *See, e.g., Day*, 560 F. App'x at 319 (affirming district court's dismissal of SVP's access to courts claim where he did not allege the purported lack of access to courts caused him an actual injury); *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (per curiam) (explaining that prisoner could not state a viable access to courts claim based on defendants' alleged opening and reading of his legal mail "outside of his presence and without his consent," where prisoner did not assert "his position as a litigant was prejudiced"); *Charles v. Castro*, No. 5:20cv184, 2022 WL 2734041, at *1, *3–4 (E.D. Tex. Feb. 18, 2022) (recommending dismissal of prisoner's allegation that "officers read his legal work and confiscated it," where prisoner "offered nothing to suggest that his 'legal papers' were related to an underlying arguable and non-frivolous cause of action challenging his conviction or the conditions of his confinement"), *R. & R. adopted by* 2022 WL 2132531 (E.D. Tex. June 14, 2022); *Brown v. Carr*, No. C–08–170, 2009 WL 1940057, at *6 (S.D. Tex. July 2, 2009) (concluding prisoner's access to courts claim failed, where he did "not identify any legal materials" defendant allegedly destroyed, nor did he explain "how their loss adversely impacted his civil rights action").

---

[12] Rogers also alleges that Defendants Saldivar, Viurquez, Lopez, and Winkler stopped the Littlefield Police Department and the Court from "send[ing] [him] any document to even vote if it come [in] the mail [sic all]." Questionnaire 22. He does not, however, plead any facts in support. *Id.*  Because Rogers's allegation is wholly conclusory, it should be dismissed. *See Sias*, 146 F. App'x at 720.

### I.  Rogers has not pleaded facts giving rise to a constitutional violation against Defendant Marsh.

Rogers's allegation that Defendant Marsh is "corrupt" and "killed [his] apartment" does not implicate the Constitution.  Questionnaire 4; *see Sias*, 146 F. App'x at 720.  Similarly, Rogers's contention that Defendant Marsh "refused to take any or all action's [sic] against Ms. Jamie Owens and Mr. Kellen Winslow" is without merit.  *See* Questionnaire 4.  Rogers pleads no facts showing Defendant Marsh had the authority, as an attorney for TCCO, to reprimand or otherwise discipline TCCC employees.  *See* Am. Compl. 3; Questionnaire 3–4.  Moreover, to the extent Rogers's claim is based on Defendant Marsh's actions during litigation involving Rogers and Defendants Winslow and Owens, his conclusory allegations are devoid of specific facts and any resulting harm.  *See* Questionnaire 4 (alleging that Defendant Marsh "was acting as T.C.C.O. lawyer on the case's [sic] against Mr. Kellen Winslow").  The undersigned therefore recommends the district judge dismiss Rogers's claims against Defendant Marsh.

### J.  Rogers has not pleaded facts demonstrating that the alleged denial of adequate sex offender treatment violated the Constitution.

Rogers maintains that Defendants McLane, Marsh, Owens, Castillo, Curtis, Winslow, Saldivar, Winkler, and Smoker deprived him of adequate sex offender treatment, including group and tier therapy.  *See* Am. Compl. 3, 11; Questionnaire 10–12.  Specifically, Rogers indicates that after he received a disciplinary case for possessing inappropriate material, TCCC officials placed him in solitary confinement in April 2021, causing a change to his group therapy schedule.  *See* Am. Compl. 11, 15; Questionnaire 10.  The authenticated records reflect that due to the COVID-19 pandemic, the TCCC limited group therapy to individuals who were housed together.  The records include an April 2021 Progress Note stating that "Rogers ha[d] not attended any groups due to being in" the secured management unit (SMU) in order to "minimize contact across housing

units and mitigate risk with regard to the current Covid-19 crisis." Rogers signed the progress note on April 29, 2021. Despite his signed acknowledgment, Rogers contends that the TCCC's explanation was a "lie" because he "didn't have any [sic] COVID-19." Questionnaire 10. Rogers raised this same allegation in a previous case, *Rogers*, No. 5:21-cv-149-BQ, ECF No. 19, though he filed this action prior to the Court's dismissal of his claim in case 5:21-cv-149-BQ.[13]

Although unclear, Rogers also appears to contend that on a separate occasion—from January to May 2022—he did not receive sufficient group therapy. *See* Am. Compl. 13–14, 16; Questionnaire 11–12. In each instance, however, Rogers acknowledges that he received tier and group therapy—just not with the frequency he believed was necessary. *See* Questionnaire 10–12; Am. Compl. 3.

The Court understands Rogers as raising a substantive due process claim, as opposed to one for denial of adequate medical care. *See* Questionnaire 11 ("I hear for group therapy treatment only. I was place hear as if I committed a new crime where is the victim statement for me to be continue to be punish [sic all]."), 12 ("Without adequate treatment designed to effectuate ultimate release, a civil commitment program is nothing more than a de facto prison disguised as a mental health facility."); Am. Compl. 13 (asserting Defendants provided group therapy "only one day a week . . . not 2," causing him "to be held back" in tiers). The Court liberally construes Rogers's pleadings as alleging that a denial of therapy violated his due process rights by (1) transforming his civil commitment into punitive isolation and (2) prolonging his commitment by preventing him from moving through the TCCC's tiered treatment system. *See Rogers*, No. 5:21-cv-149-BQ, ECF No. 19, at 19–21 (considering the same contentions).

---

[13] To the extent Rogers attempts to assert a due process claim based on the disciplinary proceedings or subsequent confinement in SMU, the district judge should dismiss it for the reasons set forth in *Rogers*, No. 5:21-cv-149-BQ, ECF No. 19, at 12–18.

As a civilly committed person, Rogers is entitled to "more considerate treatment and conditions of confinement" than a prison inmate. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). Because Rogers "has been civilly committed to state custody as a [sexually violent predator]," however, "his liberty interests are considerably less than those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224–26 (2005) and *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997) (stating that officials "enjoy wide latitude in developing treatment regimens [for SVPs]"); *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) (per curiam) (noting that "the Constitution . . . affords a state wide latitude in crafting a civil commitment scheme" because "the state legislatures not only are equipped, but also possess the democratic mandate, to make difficult policy choices regarding the supervision and treatment of sexually violent predators" (citations omitted)). Ultimately, "[d]ue process requires only that 'the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.'" *Brown*, 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)).

As the Fifth Circuit observed in *Brown v. Taylor*, Texas maintains "twin goals of 'long-term supervision and treatment of sexually violent predators.'" *Id.* (quoting Tex. Health & Safety Code § 841.001 (West 2017)). Ceasing sex-offender treatment can, in certain circumstances, give rise to a constitutional claim. *Id.* at 244 (holding that SVP's detention in a jail where "he received *no* sex offender treatment" was not reasonably related to his supervision and treatment, and therefore violated due process). In this case, however, Rogers does not contend that Defendants denied him all therapy; instead, he acknowledges that the TCCC provided him group therapy one time per week and also assigned tier therapy tasks. *See* Questionnaire 10–12;

Am. Compl. 3, 9, 13–14, 22–24.  Even accepting Rogers's claim that he was denied additional therapeutic treatment as true, he does not state a constitutional violation.[14]

Moreover, Rogers does not specify what harm resulted from the alleged denial.  Instead, he states that Defendants "have been lying to courts on [record]," and "holding [him] back from being with [his] family on purpose" to hinder his tier progression and "to make money off of [him] like it's a game."  Questionnaire 11–12; Am. Compl. 13, 16.  Rogers's purported harm—that he might have progressed more quickly through the tiers with additional group therapy—is speculative at best.  Rogers has not pleaded any facts suggesting when he might have been released from commitment but for the alleged reduced treatment.  Therefore, the possibility that his placement in the SMU and limited access to treatment prolonged the duration of his civil commitment is "'too attenuated' to invoke further due process protections."  *Senty-Haugen*, 462 F.3d at 887 (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)).

The undersigned therefore recommends the district judge dismiss Rogers's claims based on the alleged denial of sufficient sex offender therapy.[15]  *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 321–22 (5th Cir. 2021) (unpublished) (affirming dismissal of SVP's claim that defendants denied therapy thereby prolonging his period of civil commitment, where SVP received some treatment and pleaded no facts "showing that receiving additional treatment would have expedited his release").

---

[14] The Court also observes that Rogers attributes the alleged reduction in therapy at least in part to MTC's inability to retain or hire therapists.  *See, e.g.*, Questionnaire 5, 12.  That is, Rogers acknowledges that the reduction in group therapy sessions was not intentional and therefore not an actionable constitutional claim.  *See, e.g.*, *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988) (per curiam) ("A negligent act does not rise to a constitutional violation.").

[15] Rogers also claims that TCCC officials are violating a "contract" by failing to provide sufficient group therapy.  *See, e.g.*, Questionnaire 8.  Standing alone, Rogers's contention that Defendants are violating a contract fails to state a cognizable constitutional claim.  *See, e.g.*, *Silva v. Bureau of Prisons*, No. 3:04–CV–0452–N, 2004 WL 1553471, at *4 (N.D. Tex. July 12, 2004) ("A simple breach of contract does not rise to the level of a constitutional violation.").

### K. Rogers has failed to state a claim based on Defendant Newkirk's purported failure to schedule a follow-up medical test.

The Constitution requires that institution officials provide adequate medical care.[16]  *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013).  A plaintiff seeking to establish a constitutional violation in regard to medical care must allege facts showing that officials were deliberately indifferent to his serious medical needs.  *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))).  Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (per curiam) (internal quotation marks and citation omitted)) and requires satisfaction of both an objective and a subjective component.  *Rogers*, 709 F.3d at 410.  A plaintiff must first prove objective exposure to a substantial risk of serious bodily harm.  *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).  As to the subjective component, an official acts with deliberate indifference only where he (1) "knows [the] [plaintiff] face[s] a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

---

[16] The Fifth Circuit has evaluated a civil committee's medical claims under the deliberate indifference standard.  *See Rogers v. Caswell*, 823 F. App'x 263, 264–65 (5th Cir. 2020) (per curiam) (analyzing whether civilly committed plaintiff pleaded facts supporting claim for deliberate indifference to serious medical needs); *Bohannan*, 527 F. App'x at 292 (applying deliberate indifference standard to SVP's claim for denial of adequate medical care).  The Court notes, however, that some other circuits evaluate these claims under the Fourteenth Amendment and the standard set forth in *Youngberg*.  *See, e.g.*, *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016); *Patten v. Nichols*, 274 F.3d 829, 835 (4th Cir. 2001).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, a plaintiff's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, a plaintiff must demonstrate that staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

According to Rogers, Dr. Matthew Soape at the Covenant Medical Center in Lubbock recommended on August 12, 2020, that Rogers return at an unspecified date for a follow-up

appointment post-colonoscopy and polyp removal.  Questionnaire 14; *see* Am. Compl. 14.  Rogers alleges that despite asking Defendant Newkirk to schedule the appointment for a second colonoscopy, she "refused."  Questionnaire 14.  The Court asked Rogers to explain the harm he suffered as a result of Defendant Newkirk's alleged failure to schedule a follow-up appointment, to which he responded as follows:  "My life is already on the line just being hear [sic] under this administration as a front [for] treatment the only thing they do is pass out pills to the ones [that] really need it."  *Id.* at 15.

Rogers has failed to plead facts supporting an Eighth Amendment claim.  Rogers has not shown that by failing to schedule a follow-up appointment, Defendant Newkirk disregarded a substantial risk of serious harm.  Standing alone, Rogers's assertion that he asked Defendant Newkirk to schedule a follow-up appointment post-procedure does not suggest that Newkirk was aware of facts demonstrating an excessive risk to Rogers's health, or that she actually drew the inference of any such risk.  Moreover, the Court cannot conclude that the mere fact Dr. Soape (an outside medical provider) *recommended* a follow-up appointment placed Defendant Newkirk on notice of any particular risk.  *See, e.g.*, *Montgomery v. Logsdon*, No. 20-756, 2021 WL 4138361, at *7 (E.D. La. Aug. 13, 2021) ("A jail's medical department is not necessarily obligated to implement all aspects of care prescribed or recommended by an outside medical provider or specialist."), *R. & R. adopted by* 2021 WL 4133552 (E.D. La. Sept. 10, 2021); *Nelson v. Griffin*, No. 5:16-CV-00049-RWS, 2018 WL 1250063, at *4 (E.D. Tex. Mar. 12, 2018) (stating that "the failure to follow a course of treatment recommended by an outside doctor does not itself show deliberate indifference").  At best, Defendant Newkirk may have been negligent in failing to timely schedule a follow-up appointment, which does not rise to the level of a constitutional violation.  *See, e.g.*, *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020) ("Deliberate indifference cannot

be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." (citation omitted)); *Gobert*, 463 F.3d at 346.

The Court also observes that the authenticated records show Dr. Soape initially examined Rogers on June 30, 2020, and then conducted a colonoscopy with polyp removal on August 12. Dr. Soape noted that Rogers should follow-up in four to six weeks.  On July 28, 2021—i.e., almost one year later—Rogers asked Defendant Newkirk about a follow-up appointment with Dr. Soape. The records show this was the first time Rogers had spoken to Defendant Newkirk about the appointment.  Defendant Newkirk notated that she was ordering records from Dr. Soape's office "to determine when follow up is needed."  Thus, the records reflect Defendant Newkirk was responsive to Rogers's request and do not show she "ignored his complaints" or otherwise engaged in "conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238.

For these reasons, the undersigned recommends the district judge dismiss Rogers's medical care claim.

### L. Rogers has not stated a viable claim against Defendants Winslow and Curtis based on their alleged licensing deficiencies and conspiracy to violate Rogers's constitutional rights.

Rogers asserts multiple claims against Defendants Winslow and Curtis:  (1) they are not licensed to deliver the type or level of therapy they were providing, which hindered Rogers's tier advancement; (2) Defendant Winslow improperly required Rogers to redo or complete tier assignments between February and April 2022; and (3) they conspired to lie to the courts and hurt Rogers and his family.  Questionnaire 5, 8, 19, 21, 23–25; Am. Compl. 3–4, 16–18, 20.

### 1. *Rogers's claims based on Defendants' purported licensing deficiencies and Defendant Winslow's therapy assignments are without merit.*

Rogers maintains that Defendant Winslow does not have a license to provide therapy to residents on Tiers 2–4.  Questionnaire 5; *see* Am. Compl. 10.  Rogers further alleges that Defendant Curtis does not have a "LSOTP" license—"she is a law-library licensed tech."  Questionnaire 8; *see* Am. Compl. 10.  He contends that despite Curtis's purported lack of a license, she uses the title "law library therapist."  Questionnaire 8.  Rogers asserts that Defendants Winslow's and Curtis's licensing deficiencies have impacted his ability to advance tiers.  *See id.* at 5, 8.

Standing alone, Rogers's allegation that Defendants are not properly licensed fails to implicate the Constitution.  Indeed, whether Defendants have complied with Texas licensing requirements is not a constitutional matter.  *Cf. Etheridge v. Miss. Dep't of Corr. Votec Schs.*, 79 F. App'x 47, 48 (5th Cir. 2003) (per curiam) ("To the extent that [plaintiff] is asserting that the defendants violated state law, such a claim is not cognizable under 42 U.S.C. § 1983."); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982) ("[V]iolation of state law alone does not give rise to a cause of action under s 1983."); *see* 22 TEX. ADMIN. CODE § 810.8 (addressing revocation, denial, or non-renewal of a license); § 810.9 (setting forth process for reviewing complaints regarding a licensee).

To the extent Rogers's allegations inculpate his substantive due process rights, the Court evaluates the merits of his claims.  Under § 810.3 of the Texas Administrative Code, "[a] person shall not provide sex offender treatment or act as a sex offender treatment provider unless the person is licensed by the" Council on Sex Offender Treatment.  § 810.3(a).  Further, "[a] person may not claim to be a sex offender treatment provider or use the title or an abbreviation that implies the person is a sex offender treatment provider unless the person is licensed . . . ."  *Id.*  Section 810.3 sets forth the requirements for obtaining a license as a "Licensed Sex Offender Treatment

Provider (LSOTP)," including that a person must: (1) "hold a mental health or medical license"; (2) have 1,000 hours of clinical experience in the areas of assessment and treatment of sex offenders within a seven-year period; and (3) have 40 hours of continuing education training within three years. *Id.* § 810.3(c)(1). A person may also obtain a license as an "Affiliate Sex Offender Treatment Provider (ASOTP)," who is supervised by a LSOTP. *Id.* § 810.3(c)(2). The council "maintain[s] a list of licensees who meet the council's licensure criteria to assess and treat adult sex offenders and/or juveniles who commit sexual offenses." *Id.* § 810.3(b).

As to Defendant Winslow, Rogers does not contend that he was unlicensed. Questionnaire 5; *see* Am. Compl. 10. Instead, he believes Defendant Winslow was not qualified to provide therapy to patients on Tiers 2 through 4. Questionnaire 5; Am. Compl. 3, 10, 13. Rogers cites to no authority, and the Court has found none, requiring a LSOTP or ASOTP to maintain a specific license to provide treatment at certain tiers. *See* § 810.3. Moreover, Rogers was apparently on Tier 1 at the time Defendant Winslow provided him therapy. *See, e.g.*, Am. Compl. 20; Questionnaire 5. According to Rogers's allegations, therefore, Defendant Winslow was qualified to provide therapy to Rogers.[17]

Finally, any assertion that Defendant Winslow's alleged licensing deficiency prolonged or otherwise extended Rogers's civil commitment is speculative. Rogers was apparently demoted to Tier 1 in April 2021 based on his possession of pornographic material and subsequent disciplinary conviction. *See* Questionnaire 5; *Rogers*, No. 5:21-cv-149-BQ, ECF No. 19, at 6 & n.4, 12. Rogers pleads no facts showing that Defendant Winslow's therapy was so deficient that it prevented him

---

[17] A search on the Texas Health and Human Services website reveals that Defendant Winslow is licensed as a LSOTP, a rank he apparently obtained April 27, 2023. *See Online Licensing Services*, Tex. Health & Human Servs., https://vo ras.dshs.state.tx.us/datamart/mainMenu.do (follow "license search" and "Search by Name" hyperlinks; then "Search by Individual" and type "Winslow, Kellen"). The authenticated records reflect (via documentation from Texas Health and Human Services) that Defendant Winslow was previously licensed as a ASOTP beginning October 4, 2021.

from advancing tiers. *See* Am. Compl. 13, 16–18, 20; Questionnaire 5, 11, 24. Instead, Rogers disagrees with Defendant Winslow's therapy assignments and assessment of Rogers's progression in therapy—actions Winslow apparently took between February and April 2022. *See* Am. Compl. 13, 16–18, 20; Questionnaire 5, 11, 24. But as discussed above, Rogers pleads no facts showing that he would have advanced in tiers and been released from commitment earlier but for Defendant Winslow's actions. *See supra* Section III.J; Questionnaire 5, 24. Indeed, the Court provided Rogers the opportunity to "describe how [Defendant] Winslow's alleged decision" to have Rogers redo assignments violated his constitutional rights and how Rogers was harmed by the decision. Questionnaire 24. Rogers merely responded that Defendant Winslow was verbally abusive. *See id.*

The Court also observes that under § 841.0834 of the Texas Health and Safety Code, "the office," i.e., the TCCO, is ultimately responsible for Rogers's movement between tiers—not Defendant Winslow. TEX. HEALTH & SAFETY CODE § 841.0834(a), (c); *see* § 841.002 (defining "office" to mean the TCCO). Moreover, Texas state law provides a mechanism for Rogers to challenge his tier placement. *See* § 841.0834(b) (providing that "[w]ithout the office's approval, a committed person may file a petition with the court for transfer to less restrictive housing and supervision").

Turning to Defendant Curtis, Rogers contends that she is unlicensed. Am. Comp. 10; Questionnaire 8. But Rogers does not aver that Defendant Curtis provided therapeutic treatment. *See* Questionnaire 8 (alleging only that Defendant Curtis stood "over [his] head at the law-library or on her computer looking at [Rogers's legal] work that ofton been changed behide [his] back [sic all]" and that she has "bad issue of calling people child rapist"). Instead, Rogers seems to allege either that (1) Defendant Curtis is "a law-library licensed tech" but *should* be licensed as a LSOTP

or ASOTP to work at the TCCC (*id.*), or (2) Defendant Curtis calls herself "a law-library therapist" but she is not licensed and cannot hold herself out as a "therapist." *See id.*; Am. Compl. 23; *see also* Questionnaire 7 (reflecting a client communication form in which Rogers told Curtis he "need[ed] [her] administrative security licensing and regulation number and M.A., LPC-A, ASOTP license number"). Regardless, the harm Rogers contends he suffered as a result of Defendant Curtis's purported actions is speculative: "This is a tactic to be held back and creating a none therapeutic curriculum treatment knowing that we was only going to group one time a week over 5 ½ month's [sic all]." Questionnaire 8. That is, Rogers avers that Defendant Curtis contributed to "confinement which imposes restrictions that are so excessive as to indicate the purpose is punitive rather than rehabilitative" and that violated the "Texas program and contract policy." *Id.* But Rogers pleads no facts showing that Defendant Curtis actually provided him "therapy" or that she had the authority to influence his tier assignment. *See id.*

In sum, Rogers has pleaded facts demonstrating, at best, speculative harm, which is insufficient to support a substantive due process claim.[18] *See supra* Section III.J; *see also Antonelli v. Marquez*, No. 2:08CV00003 JMM/HDY, 2008 WL 2782705, at *6 (E.D. Ark. July 14, 2008) ("Plaintiff's allegations that there is some connection between [defendants' inadequate licensing] and his expulsion from the [drug abuse] program for non-compliance are simply too tenuous to state a claim for relief, nor can he show that he has personally sustained any injury in fact as a result of [defendants'] status."). The undersigned therefore recommends dismissal of Rogers's licensing claims against Defendants Winslow and Curtis.

---

[18] Arguably, the closest Rogers gets to a sustainable claim is his assertion that Defendants (primarily Winslow) gave assignments that were not part of the curriculum and made "up rules along the way that we don't get credit for on our group treatment assignment." Am. Compl. 13 (cleaned up). Rogers implies that Winslow did this after learning that Rogers reported him for not being licensed. Beyond these general assertions, Rogers provides no facts detailing specific examples of such conduct or how it caused him particularized harm. This negates both substantive due process and retaliation claims. To the extent Rogers intends to assert a retaliation claim based on Defendant Winslow's alleged conduct, the Court addresses it in more detail in Section III.M below.

### 2. *Rogers pleads no facts showing Defendants Winslow and Curtis unlawfully conspired against him.*

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.*; *accord Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." (citation omitted)); *Chadman v. Quisenberry*, No. 4:17-CV-700-Y, 2019 WL 3530422, at *6 (N.D. Tex. Aug. 2, 2019) ("Conspiracy claims under § 1983 require that the claimant relate specific facts."). "Therefore, to establish his conspiracy claim, [Rogers] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights." *Montgomery*, 759 F. App'x at 314.

Rogers's allegations do not support a conspiracy claim under § 1983. He conclusorily contends that Defendants "conspired" together but provides no facts in support. *See* Questionnaire 23–24. Specifically, Rogers has failed to plead facts demonstrating an agreement between Defendants. *See id.* at 23 (responding to the Court's question that Rogers "[d]escribe all facts forming the basis of [his] belief that Defendants entered into an agreement to conspire" with, "The belief was when I reported the attempted to have me assaulted by staff security on false statement [sic all]"). As such, the conspiracy claim against Defendants Winslow and Curtis should be dismissed. *Doss v. City of DeSoto*, No. 3:19-cv-00408-S-BT, 2020 WL 1216716, at *3 (N.D. Tex. Feb. 18, 2020) (recommending dismissal of plaintiff's conspiracy claim because merely alleging

that defendants "'conspired' to ruin his life" was not adequate to show an alleged agreement), *R. & R. adopted by* 2020 WL 1187174 (N.D. Tex. Mar. 11, 2020); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (citation omitted) (dismissing conspiracy claim because plaintiff did not "set forth specific allegations that [defendants] agreed to commit an illegal act"); *Simmons v. Jackson*, No. 3:15-cv-1700-S-BT, 2018 WL 4574975, at *4 (N.D. Tex. Sept. 6, 2018) (recommending dismissal of conclusory conspiracy claim), *R. & R. adopted by* 2018 WL 4568802 (N.D. Tex. Sept. 24, 2018); *Bagley v. Quada*, No. H-04-2371, 2005 WL 2757366, at *9 (S.D. Tex. Oct. 25, 2005) (concluding plaintiff's "bald allegations" that defendants conspired to violate his constitutional rights were insufficient to state a claim).

### M. Rogers has not pleaded sufficient facts showing Defendants unconstitutionally retaliated against him.

Liberally construing Rogers's allegations, he asserts the following retaliation claims: (1) Defendant Owens held him back in tiers "because Plaintiff, Rogers, wouldn't give them any information out of his Paralegal work" (Am. Compl. 18; Questionnaire 16); (2) Defendants Winslow and Owens hindered Rogers's tier progression "after [he] reported" unspecified actions to MTC (Am. Compl. 20); (3) Defendant Owens retaliated after Rogers submitted grievances about, *inter alia*, the cost recovery deductions from his stimulus checks. Questionnaire 16.

To successfully assert a retaliation claim, civilly committed persons must show: "(1) a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Bohannan*, 527 F. App'x at 291 (citing *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam)); *see also id.* at 299 (same). A plaintiff "must allege more than his personal belief that he is the victim of retaliation," and conclusory "allegations of retaliation will not be enough" to support such a claim. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam)). To establish causation, a plaintiff must demonstrate

that "but for the retaliatory motive[,] the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  A plaintiff "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (internal quotation marks omitted).

Initially, the Court observes that Rogers does not have a constitutionally protected right to file frivolous grievances; therefore, a frivolous grievance cannot support a viable retaliation claim. *See, e.g.*, *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997); *Mitchell v. Miller-Roach*, No. 3:10–CV–1762–K–BK, 2011 WL 2273509, at *3 (N.D. Tex. May 17, 2011), *R. & R. adopted by* 2011 WL 2292247 (N.D. Tex. June 8, 2011).  Similarly, "secondary litigation activity, *i.e.*, legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, [cannot] comprise the basis of a retaliation claim." *Johnson*, 110 F.3d at 311; *see Brown v. Craven*, 106 F. App'x 257, 258 (5th Cir. 2004) (per curiam).

As such, Rogers's claim that Defendant Owens retaliated after he filed a grievance related to the deduction of the cost recovery payments from his stimulus checks is meritless.  This is because, as discussed above, Rogers has not shown that the deductions were unlawful.  *See supra* Section III.G.  Moreover, Rogers's contention that Defendants Owens and Winslow held him back in tiers after Rogers reported their unspecified actions and failed to turn over his legal work is without merit.  Rogers pleads no facts demonstrating that he filed (or verbally made) a non-frivolous grievance concerning Defendants' alleged actions, nor has he shown that the "legal work" consisted of "legal research and writing . . . challenging [Rogers's] own conviction(s) or the conditions of his . . . confinement."  *Johnson*, 110 F.3d 311; *see supra* Section III.H.  In addition, Rogers does not possess a privacy right in his legal work.  *See supra* note 11.

Even if Rogers had filed non-frivolous grievances or engaged in protected litigation activity, however, his claims would fail for the reasons below.

### 1. *Defendant Owens's alleged retaliation because Rogers refused to show her his legal work*

Rogers contends that he refused to give Defendant Owens "information or a statement of anything out of his legal work or grievances that [he has] filed into court." Am. Compl. 18 (cleaned up). Rogers maintains that as his case manager, Defendant Owens "can't force [him] to do anything [he] don't [sic] want to do." *Id.* In response to his refusal, Defendant Owens purportedly "push[ed] the keyboard on her computer for assistance," raised her voice and "pointed her finger in [Rogers's] face," and threatened to "have [Rogers] falsely locked up." *Id.* (cleaned up); *see* Questionnaire 16–17 (alleging that Defendant Owens threatened and/or harassed him).

Assuming Rogers's refusal to turn over or discuss his legal work establishes the first element of a retaliation claim—the exercise of a specific constitutional right—he does not contend that Defendant Owens's alleged retaliatory conduct amounted to a constitutional injury. Stated differently, Defendant Owens's actions are, at best, "insignificant retaliatory acts" that Rogers does not allege chilled him from continuing to pursue constitutionally protected activities. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."); *see infra* Section III.O.1. Because the acts Rogers attributes to Defendant Owens "are so *de minimis* that they would not deter the ordinary person from further exercise of his rights," Rogers fails to state a retaliation claim. *See, e.g.*, *Moore v. Charles*, No. 4:14cv825, 2017 WL 750311, at *3 (E.D. Tex. Feb. 27, 2017) (concluding plaintiff's retaliation claim failed in part because defendant's alleged retaliatory act was *de minimis* and "would not deter a person of ordinary firmness from exercising their rights"); *Hill v. Gatson*, No. G-03-966, 2007 WL 869536,

at *2 (S.D. Tex. Feb. 15, 2007) (noting that prisoner had not alleged that defendant's filing of an allegedly false disciplinary infraction "prevented or chilled [prisoner] from filing [additional] grievances"); *Johnson v. Parks*, No. 5:03–CV–024–C, 2004 WL 2101669, at *5 (N.D. Tex. Sept. 15, 2004) (dismissing prisoner's retaliation claim in part because he did not demonstrate that defendant's action caused prisoner to stop, or prevented him from, filing grievances or lawsuits), *aff'd*, 182 F. App'x 300 (5th Cir. 2006).

### 2. *Defendants Owens and Winslow's alleged retaliation based on Rogers's reports to MTC*

Rogers makes the conclusory assertion that Defendants Winslow and Owens hindered his tier progression "after [he] reported" unspecified actions to MTC. Am. Compl. 20. Rogers does not specify the date(s) on which he reported Defendants' actions to MTC. *See id.*; *see also* Questionnaire 16 (providing dates of grievances to Defendant Owens but not indicating that the grievances related to the conduct of Defendants Winslow or Owens). Without alleging direct evidence of Defendants' retaliatory motive or a chronology of events from which it may be inferred, Rogers cannot state a claim. *Woods*, 60 F.3d at 1166; *see Mahogany v. Rogers*, 293 F. App'x 259, 260 (5th Cir. 2008) (per curiam) (affirming dismissal of prisoner's retaliation claim where he did not allege a chronology of events from which retaliation could be inferred).

In addition, Rogers fails to plead facts showing that but for Defendants' retaliation, he would have advanced in tiers. Rogers acknowledges that he obtained the "help" of another therapist, "Ms. J. Wilson," to do an assignment, which Winslow then required him to redo on his own. Am. Compl. 16. Defendant Winslow also told Rogers that "he wanted to get to know" Rogers before recommending tier promotion. *Id.* at 20. Rogers pleads no facts indicating Defendant Owens's personal involvement in the retaliation, other than stating that Defendants Owens and Winslow worked together. *See id.* at 18.

Moreover, Rogers's allegations concerning his tier progression are speculative.  *See supra* Section III.J.  In sum, Rogers pleads no facts showing that he would have advanced tiers but for Defendants' retaliatory motive.  *See Lee v. Richland Par. Det. Ctr.*, No. 3:11–cv–0925, 2011 WL 6057859, at *10 (W.D. La. Oct. 25, 2011) (recommending dismissal of plaintiff's retaliation claim, where plaintiff failed to demonstrate that but for his exercise of a constitutional right, the alleged retaliatory act would not have occurred), *R. & R. adopted by* 2011 WL 6097731 (W.D. La. Dec. 6, 2011), *aff'd*, 483 F. App'x 904 (5th Cir. 2012).  On this basis, Rogers's retaliation claim also fails.  *See Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013) (per curiam) ("To show the causation necessary to succeed on a retaliation claim, a prisoner must show that the adverse act would not have occurred but for the retaliatory motive.").  Thus, this claim should be dismissed.

### 3.  *Defendant Owens retaliated based on Rogers's filing of grievances*

Rogers alleges that he "sent [Defendant Owens] a communication form" regarding the allegedly unlawful cost recovery payment deduction from his stimulus checks.  Questionnaire 16. In response, Defendant Owens purportedly told Rogers that she had "nothing to do with this" issue and that Rogers should address it with TCCO.  *Id.*  Defendant Owens also apparently told him "to stop crying about medical department" issues and took three months to respond to a grievance (of unknown content) he filed in December 2021.  *Id.*  He asserts no harm related to her actions.  *Id.* at 17.

Rogers does not contend that Defendant Owens's alleged retaliatory conduct amounted to a constitutional injury.  Defendant Owens's actions are, at best, "insignificant retaliatory acts" that Rogers does not allege chilled him from continuing to pursue constitutionally protected activities. *Morris*, 449 F.3d at 686.  For this reason alone, his retaliation claim fails.  *See, e.g.*, *Moore*, 2017 WL 750311, at *3; *Johnson*, 2004 WL 2101669, at *5.

Moreover, Rogers does not allege Defendant Owens acted with retaliatory intent when she responded to his December 2021 grievance three months later.  *See* Questionnaire 16–17.  Nor does Rogers plead facts showing Defendant Owens's alleged responses—that she was unable to address his complaint and that he should "stop crying" about the medical department—were made with retaliatory intent.  *See Jones*, 188 F.3d at 325 (holding that conclusory allegations or personal beliefs are not sufficient to establish a retaliation claim); *Moore*, 2017 WL 750311, at *3 ("[Defendant] cannot have acted with intent to retaliate or commit a retaliatory act against [p]laintiff by merely performing his duties as a TDCJ employee and applying TDCJ policy in a disciplinary case filed by another officer.").

In sum, Rogers's conclusory allegations concerning Defendants' alleged retaliation do not state a claim sufficient to survive screening.  The undersigned therefore recommends the district judge dismiss Rogers's claims.

### N.  Rogers's claims against Defendants in their official capacities should be dismissed.

Rogers sues Defendants in their official and individual capacities.  *See* Am. Compl. 9.  A suit against Defendants in their official capacities is simply another way of stating a claim against the TCCC or TCCO, and therefore the State of Texas.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").  It is well established that suits for monetary damages against state officials in their official capacities are barred both by state sovereign immunity and the Eleventh Amendment, and therefore cannot succeed under § 1983.  *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and

Eleventh Amendment immunities); *Hitt v. McLane*, 854 F. App'x 591, 594 (5th Cir. 2021) (per curiam).

Thus, the district judge should dismiss any claim for monetary damages against Defendants in their official capacities.[19]

### O. Miscellaneous Claims

#### 1. *Verbal Harassment*

Rogers references Defendants' alleged verbal harassment and threats. *See, e.g.*, Am. Compl. 16–17, 22. Any claim against Defendants based on purported verbal threats is not cognizable in this § 1983 action. *See, e.g.*, *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (providing that the Fifth Circuit "has recognized as a general rule that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations" (internal quotation marks, alterations, and citation omitted)). The Court therefore recommends dismissal of Rogers's claim.

#### 2. *Destruction of Property*

For the first time in his questionnaire responses, Rogers alleges that Defendants Saldivar, Viurquez, Lopez, and Winkler destroyed his property on April 9, 2021, "and refused to even pay [him] for the damages." Questionnaire 22.

An official's actions—whether negligent or intentional—that result in a loss of property give rise to a state tort action rather than a federal civil rights claim. Indeed, a state actor's negligence that results in an unintentional loss of property does not violate the Constitution. *See Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) (per curiam); *see also Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995) (concluding negligence is not actionable under § 1983); *Finley v.*

---

[19] An additional basis for dismissal of these claims is that neither a state nor its officials acting in their official capacities are "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

*Garcia*, No. 5:17-CV-00198-C, 2017 WL 11519122, at *1 (N.D. Tex. Sept. 15, 2017) ("Section 1983 is not a general tort statute and a claim of negligence will not support a federal civil rights action." (citation omitted)).  To the extent Rogers intends to allege that Defendants' negligence deprived him of his personal property, such claim should be dismissed.  *See, e.g.*, *Strouse v. Karl*, No. 4:09cv640, 2011 WL 4591952, at *9 (E.D. Tex. Aug. 26, 2011) (dismissing claim where inmate's "allegation that [defendant] lost certain items of [property] merely accuse[d] [defendant] of negligence"), *R. & R. adopted by* 2011 WL 4591943 (E.D. Tex. Sept. 30, 2011).

Similarly, an intentional deprivation of personal property does not state a viable constitutional claim if the plaintiff has access to an adequate post-deprivation state remedy.  *See Hudson*, 468 U.S. at 533; *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam) ("An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally." (citations omitted)).  Here, the State of Texas provides an adequate post-deprivation remedy for persons asserting claims such as those raised herein by Rogers—the filing of a lawsuit for conversion in state court.  *See, e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).  Assuming, without finding, that Defendants wrongfully destroyed his property, as alleged, Rogers may have a cause of action in state court; however, he cannot pursue a federal constitutional claim.  *See, e.g.*, *Perez v. Tanner*, No. 3:17-cv-2846-N-BN, 2017 WL 7000283, at *4 (N.D. Tex. Dec. 22, 2017) (dismissing due process claim alleging the destruction of inmate's property because he had a state remedy), *R. & R. adopted by* 2018 WL 501601 (N.D. Tex. Jan. 19, 2018).

In sum, Rogers cannot raise a constitutional claim based on Defendants' alleged property deprivation.[20]  Accordingly, the undersigned recommends Rogers's claims against Defendants be dismissed.

### 3. *State law claims*

To the extent Rogers intends to assert claims under Texas state law, the undersigned recommends that the district judge decline to exercise jurisdiction over the pendent claims.  *See, e.g.*, Am. Compl. 14, 17, 19.  Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because the undersigned has recommended that all of Rogers's federal claims be dismissed, the Court should decline to exercise § 1367 supplemental jurisdiction over Rogers's state law claims and dismiss them without prejudice.  *See, e.g.*, *Lizotte v. Leblanc*, 456 F. App'x 511, 513 (5th Cir. 2012) (per curiam) (affirming district court's dismissal of plaintiff's state law claims for negligence and retaliation where court had properly dismissed all claims over which it had original jurisdiction and therefore "had an adequate basis for declining to exercise supplemental jurisdiction"); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 (5th Cir. 2001) (noting that a "district court may refuse to exercise supplemental jurisdiction" over state law claims where the court dismisses claims giving rise to original jurisdiction); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (providing that dismissal of "pendent claims should expressly be *without* prejudice so that the plaintiff may refile his claims in the appropriate state court").

---

[20] Rogers pleads no facts indicating Defendants acted in accordance with a state policy.  *See* Questionnaire 22.

## IV.    Leave to Amend

Rogers has filed a motion for leave to amend his complaint.  ECF No. 37.  Ordinarily, leave to amend should be granted freely; however, the court need not do so where amendment would be futile.  *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016); *see Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (listing "five considerations in determining whether to deny leave to amend a complaint: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies'" through prior amendments, "undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment" (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate*, 822 F.3d at 211.  Moreover, the court may dismiss a plaintiff's claims with prejudice and without granting leave "if the plaintiff has been given adequate opportunity to cure the inadequacies in his pleading or if the pleadings demonstrate that the plaintiff has pleaded his *best case*." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 423 (5th Cir. 2017) (per curiam) (internal quotation marks and citation omitted).  "The principal vehicles which have evolved for remedying inadequacy in prisoner pleadings are the *Spears* hearing and a questionnaire to bring into focus the factual and legal bases of prisoners' claims." *Id.* (citation omitted).

Here, the Court previously required Rogers to amend his complaint (*see* ECF Nos. 6, 13) *and* issued a questionnaire to further develop Rogers's factual allegations.  ECF Nos. 26, 28. Rogers's proposed second amended complaint is notably devoid of factual information—including the who, what, where, when, why, and how—thus providing no basis to alter the undersigned's conclusions herein, and Rogers does not appear to raise any new claims or name any new

defendants. *See* ECF No. 37-1. It seems Rogers primarily moves to amend to expressly include a RICO claim, but he does not plead any additional facts that would support a viable cause of action. *See id.* at 3, 5; *supra* Section III.G.

Thus, Rogers has had an adequate opportunity to cure his pleading deficiencies through his questionnaire responses. *Alderson*, 848 F.3d at 423. Rogers's proposed amended complaint shows that he has pleaded his best case, and any additional amendment would be futile. *Legate*, 822 F.3d at 211. The undersigned therefore recommends the district judge **DENY** Rogers's motion to amend. *See, e.g.*, *Jackson v. Randolph*, 772 F. App'x 197 (5th Cir. 2019) (per curiam) (affirming district court's denial of amendment where, among other things, the record reflected that plaintiff had "pleaded his best case"); *Cardenas v. Young*, 655 F. App'x 183, 187–88 (5th Cir. 2016) (per curiam) (holding district court did not abuse its discretion by failing to give plaintiff an opportunity to amend, where plaintiff could have moved to amend while magistrate judge's report and recommendation was pending but he did not do so, and plaintiff "ha[d] still yet to explain what new facts he could [have] allege[d]" to state a viable claim); *Jones v. Kelly*, 611 F. App'x 229, 231 (5th Cir. 2015) (per curiam) ("Because [plaintiff's] proposed amendments merely stated or repeated more bare or immaterial assertions, any amendment would have been futile."); *cf.* *Gonzalez v. Gillis*, No. 21-60634, 2023 WL 3197061, at *6 (5th Cir. May 2, 2023) (determining district court erred in dismissing plaintiff's claims with prejudice where plaintiff did not have "an adequate opportunity to cure his pleading deficiencies" and his objections to the magistrate judge's report and recommendation "include[d] new factual allegations that show[ed] he ha[d] not pleaded his best case").

## V.    Recommendation

For these reasons, the undersigned **RECOMMENDS** that the United States District Judge: (1) **STRIKE** Rogers's second motion for summary judgment (ECF No. 38); (2) **DENY** as futile Rogers's motion to amend (ECF No. 37); and (3) **DISMISS** Rogers's claims in accordance with § 1915 and as described more fully herein.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: June 30, 2023.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**